## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                   )

NATIONAL CONSUMER LAW     )     Civil Action No. _____
CENTER,                            )
                                   )
        Plaintiff,            )     **FREEDOM OF INFORMATION ACT**
                                   )     **COMPLAINT FOR DECLARATORY**
                                   )     **AND INJUNCTIVE RELIEF**
      v.                     )
                                   )
UNITED STATES DEPARTMENT    )
OF EDUCATION,                )
                                   )
        Defendant.          )
                                   )

## INTRODUCTION

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to enforce the public's right to documents governing the relationship between the United States Department of Education ("ED" or "Department") and private student loan servicing companies with whom ED contracts to handle billing and other services for the federal student loans of over 40 million Americans.[1]

2.     On July 17, 2018, in an effort to enhance transparency concerning ED's instructions to and oversight of servicers, Plaintiff, National Consumer Law Center ("NCLC"), submitted a FOIA Request ("Request") seeking the release of ED's contract (including related amendments) with one of those servicing entities, specifically the Pennsylvania Higher Education Assistance Agency ("PHEAA") (Contract No. ED-FSA-09-D-0014).

3.     The materials sought are of tremendous importance to understanding the $1.5

---

[1] U.S. Dep't of Educ., Federal Student Loan Portfolio, *available at* https://studentaid.ed.gov/sa/about/data-center/student/portfolio.

trillion student loan market, the vast majority of which is held by the ED and serviced by its contractors.  For example, the Government Accountability Office has repeatedly recognized the importance of transparency in loan servicing and has called for wide-ranging improvement to ED's oversight of these entities.[2]  Understanding what ED requires from its contractors will improve public understanding of both how servicers are expected to perform and how ED can better hold them accountable.

4.      Notably, the U.S. Department of Justice and ED have stressed the importance of the requested materials, citing the requested contract as a basis to support its pronouncement that state regulators and law enforcement agencies are prohibited from enforcing state consumer protection statutes against student loan servicers.

5.      In a Statement of Interest filed in January 2018, the Solicitor General stated that "PHEAA's work for the Federal Government…is already heavily regulated…by the terms of PHEAA's contract with the Department."[3] The Statement of Interest further refers to this "voluminous [contract]—spanning more than 600 pages and including provisions governing PHEAA's financial controls, internal monitoring, communications with borrowers, and many other topics"—as well as the more than 450 modifications to the contract, as evidence that the Higher Education Act preempts state law.[4]  ED later reiterated this position in a Notice of Interpretation in the Federal Register.[5]

---

[2] U.S. Gov't Accountability Office, GAO-18-587R, Federal Student Loans: Further Actions Needed to Implement Recommendations on Oversight of Loan Servicers (July 27, 2018); U.S. Gov't Accountability Office, GAO-16-523, Federal Student Loans: Education Could Improve Direct Loan Program Customer Service and Oversight (May 16, 2016).
[3] Statement of Interest by the United States, Commonwealth of Massachusetts v. Pa. Higher Educ. Assistance Agency, No. 1784CV02682, at 2 (Mass. Super. Ct. filed Jan. 8, 2018).
[4] *Id*.
[5] U.S. Dep't of Educ., Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 83 Fed. Reg. 10,619 (Mar. 12, 2018).

6. NCLC requested documents that ED itself has identified as evidence that it alone is capable of, and responsible for, ensuring the proper servicing of the loans for millions of student loan borrowers.

7. Despite the legal significance ED ascribes to these materials, neither the contract nor the modifications are publicly available in their entirety, nor has the ED been able or willing to provide those documents in the nine months since it received NCLC's Request.

## PARTIES

8. NCLC, a non-profit corporation founded in 1969, assists consumers, advocates, and public policymakers nationwide who use the powerful and complex tools of consumer law to ensure justice and fair treatment for all, particularly those whose poverty renders them powerless to demand accountability. NCLC regularly issues reports, books, and newsletters on consumer issues, including student loan law, which are distributed to consumers, lawyers, academics, and other interested parties. NCLC also houses the Student Loan Borrower Assistance Project ("SLBA"), which focuses on providing information about student loan rights and responsibilities for borrowers and advocates. SLBA also seeks to increase public understanding of student lending issues and to identify policy solutions to promote access to education, lessen student debt burdens, and make loan repayment more manageable. NCLC is incorporated in the Commonwealth of Massachusetts and its principal place of business is located at 7 Winthrop Square, Boston, Massachusetts 02110-1245.

9. Defendant United States Department of Education is a federal agency within the meaning of FOIA, *see* 5 U.S.C. § 552(f)(1), and has possession of and control over the records Plaintiff seeks.

## JURISDICTION

10.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

11.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

### ED Fails to Adequately Oversee Student Loan Servicers

12.     Congress created the Direct Loan Program as part of the Student Loan Reform Act of 1993 (Pub. L. 103-66). Under the program, the Federal government is the direct lender to the borrower and is responsible for all aspects of the lending process from loan origination through repayment, including the proper servicing and collection of the loan.

13.     Congress provided that the program would be administered by the Department through student loan servicers, directing the Secretary to enter into contracts for loan "servicing" and for "such other aspects of the direct student loan program as the Secretary determines are necessary to ensure the successful operation of the program." 20 U.S.C. 1087f(b)(4). The Higher Education Act ("HEA") directs the Secretary to award servicing contracts only to entities "which the Secretary determines are qualified to provide such services" and "that have extensive and relevant experience and demonstrated effectiveness." 20 U.S.C. 1087f(a)(2).

14.     Accordingly, ED assigns each Department-held student loan to one of nine private loan servicers. The servicer, which handles the billing and other services on federal student loans, is the primary point of contact for student borrowers.

15.     As noted in both the Statement of Interest filed in *Commonwealth of Massachusetts v. Pennsylvania Higher Education Assistance Authority* and in ED's published Notice of Interpretation, Federal Preemption and State Regulation of Federal Student Loan Programs and Federal Student Loan Servicers (hereafter "Notice of Interpretation"), "in its contracts with loan servicers, including task orders and change requests issued under those contracts, the Department specifies in detail the responsibilities and obligations of the servicers for Direct Loans and the benefits provided under that program such as Public Service Loan Forgiveness and income-driven repayment plans."[6]

16.     Plaintiff's Request sought those "contracts … including task orders and change requests issued under those contracts" with PHEAA.

17.     According to the Department's most recent data, PHEAA services over a quarter —$343.6 billion—of the Department's outstanding student loans, and approximately 8.21 million student borrowers.[7]

18.     ED is expected to pay PHEAA up to $194,639,006 to service these loans for the current contract year.[8]

19.     Servicers play a critical role in keeping student loan borrowers out of default on their loans. Borrowers whose debt is serviced by PHEAA consistently have among the highest delinquency rates compared to borrowers whose debt is serviced by other organizations.[9]

---

[6] U.S. Dep't of Educ., Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 83 Fed. Reg. 10,619, 10,620 (Mar. 12, 2018). *See* Statement of Interest by the United States, Commonwealth of Massachusetts v. Pa. Higher Educ. Assistance Agency, No. 1784CV02682 (Mass. Super. Ct. filed Jan. 8, 2018).
[7] U.S. Dep't of Educ., Federal Student Loan Portfolio, *available at* https://studentaid.ed.gov/sa/about/data-center/student/portfolio.
[8] USASpending.gov, PHEAA Contract Summary, *available at* https://www.usaspending.gov/#/award/68059450.
[9] U.S. Dep't of Educ., Servicer Performance Metrics and Allocations, *available at* https://studentaid.ed.gov/sa/about/data-center/business-info/contracts/loan-servicing/servicer-performance#12312017.

20.     The consequences of servicers' misconduct are significant and, at times, catastrophic for borrowers' financial lives.  According to an April 2017 CFPB report based upon student loan borrower complaints, sloppy practices by servicers created obstacles to repayment, raised the costs of debt, caused distress, and ultimately contributed to driving struggling borrowers to default.[10]

21.     PHEAA's compliance with the law and its treatment of borrowers has been deeply flawed, as has ED's supervision of PHEAA.

22.     Serious questions have been raised about ED's oversight of student loan servicers. In 2015 and 2016, the Government Accountability Office ("GAO") identified weaknesses with ED's oversight of these servicers and made a total of six recommendations to rectify the relevant weaknesses.[11] As of July 2018, ED had implemented only two of these recommendations.[12]

23.     Most recently, in February 2019, the Department's Office of Inspector General released a report finding that the Department failed to track all instances of noncompliance or to hold servicers accountable for errors.[13]

24.     The Commonwealth of Massachusetts is pursuing legal action against PHEAA for improperly processing the payments of borrowers in the federal Public Service Loan Forgiveness program.[14]

---

[10] Consumer Fin. Prot. Bureau, CFPB Monthly Snapshot Spotlights Student Loan Complaints (Apr. 2017).
[11] U.S. Gov't Accountability Office, GAO-16-196T, Federal Student Loans: Key Weaknesses Limit Education's Management of Contractors (Nov. 18, 2015); U.S. Gov't Accountability Office, GAO-16-523, Federal Student Loans: Education Could Improve Direct Loan Program Customer Service and Oversight (May 16, 2016).
[12] U.S. Gov't Accountability Office, GAO-18-587R, Federal Student Loans: Further Actions Needed to Implement Recommendations on Oversight of Loan Servicers (July 27, 2018).
[13] U.S. Dep't of Educ., Office of Inspector Gen., ED-OIG/A05Q0008, Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans (Feb. 12, 2019).
[14] Commonwealth of Massachusetts v. Pa. Higher Educ. Assistance Agency, 34 Mass. L. Rptr. 616, 2018 WL 1137520 (Mass. Super. Ct. Feb. 28, 2018).

25.     Plaintiff filed its Request seeking information about ED's contractual relationship with PHEAA. Although this information is vital to ensuring a meaningful and informed public debate over this pressing public policy issue, ED has failed to promptly respond to Plaintiff's Request in violation of FOIA.

26.     In both the federal government's Statement of Interest filed in *Commonwealth of Massachusetts v. Pennsylvania Higher Education Assistance Authority* and the Department's Notice of Interpretation, the current administration has argued federal contracts with student loan servicers preempt state consumer protection law.[15]

27.     Yet, the public has no way of knowing what ED requires from PHEAA. To the extent that PHEAA does not comply with its contractual requirements, such violations will be hidden from view prior to the release of its contract with the Department.

**ED Has Failed to Respond to Plaintiff's FOIA Request**

28.     On July 17, 2018, Plaintiff submitted the Request, seeking the release of ED records concerning its contract with PHEAA, as well as all documents detailing modifications to this contract.

29.     On July 18, 2018, ED acknowledged the Request via electronic mail and assigned the tracking number 18-02435-F.

30.     On July 18, 2018, ED sent Plaintiff an electronic message indicating that Plaintiff's request had been "assigned…out to the appropriate personnel" in ED's Federal Student Aid Office and that Plaintiff should expect to receive at least some of the relevant materials "pretty quickly."

---

[15] *See* Statement of Interest by the United States, Commonwealth of Massachusetts v. Pa. Higher Educ. Assistance Agency, No. 1784CV02682 (Mass. Super. Ct. filed Jan. 8, 2018); U.S. Dep't of Educ., Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 83 Fed. Reg. 10,619 (Mar. 12, 2018).

31.     On August 15, 2018, ED transmitted a letter via electronic mail to NCLC relating to its Request. The letter, labeled "RE: 20-DAY NOTIFICATION," states that ED is unable to "provide an estimated completion date, but intend[s] to provide records on a rolling basis as they become available." The letter further notified NCLC of "the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison."

32.     On August 16, 2018, ED sent a letter via electronic mail to NCLC relating to the Request. The letter, labeled "FOIA Request No. - 18-02642-F (REPLACES 18-02435-F)," informs NCLC, "Due to a technical error on our part, your initial request, 18-02435-F, was inadvertently deleted.  Today, a new request was entered with the same requested and received dates as stated above." ED assigned a new tracking number: 18-02642-F.

33.     ED was required to make and communicate to NCLC its determination as to NCLC's Request within 20 working days of receiving the Request. 5 U.S.C. § 552(a)(6)(A)(i). If "unusual circumstances" applied, ED would have had 30 working days to make and communicate its determination. *Id.* § 552(a)(6)(B). ED would then be required to make the records "promptly available." *Id.* § 552(a)(3)(A), (a)(6)(C)(i). However, no unusual circumstances applied to this Request.

34.     To date, the status of NCLC's Request, according to ED's FOIA Web page, is "conducting search." The Web page provides no estimated date on which ED will complete the Request.[16]

35.     To date, nine months after receipt of NCLC's Request, ED has not communicated with NCLC its determination as to NCLC's Request, nor provided NCLC with any responsive documents.

_____
[16] U.S. Dep't of Educ., Status of All FY 2019 FOIA Requests and All Open Requests for Prior Years as of 3/22/2019, *available at* https://www2.ed.gov/policy/gen/leg/foia/request-status-log.pdf.

**FIRST CAUSE OF ACTION**
**(FOIA – Failure to Conduct an Adequate Search for Records)**

36.     Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), NCLC has exhausted all administrative

remedies with respect to this Request

37.     NCLC has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(C), to an adequate

search for the records it requested and to the release of any non-exempt records identified in that

adequate search. No legal basis exists for ED's failure to search adequately for the records

NCLC seeks.

**SECOND CAUSE OF ACTION**
**(FOIA – Failure to Disclose Responsive Records)**

38.     Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), NCLC has exhausted all administrative

remedies with respect to this Request.

39.     NCLC has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records it

requested, and there is no legal basis for ED's failure to disclose the unproduced records in full.

FOIA also requires agencies to release "[a]ny reasonably segregable portion of a record," 5

U.S.C. § 552(b), and ED has not fulfilled its segregability obligation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

(1) Declare that ED has violated FOIA, by its failure to timely respond to NCLC's

Request and its failure to make the requested records promptly available;

(2) Order ED to make a determination regarding NCLC's Request;

(3) Order ED to make the requested records available to NCLC at no cost and without

delay;

9

(4) Order ED to provide an index justifying the withholding—in full or in part—of any responsive records it withholds under a claim of exemption.

(5) Retain jurisdiction over this case to monitor ED's compliance with any court orders and to rule on any assertions by ED that any responsive records held by ED are, in whole or in part, exempt from disclosure;

(6) Award NCLC its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7) Grant such other and further relief as this Court may deem just and proper.

Dated: April 17, 2019

Respectfully submitted,

/s/ Persis Yu
Persis Yu, BBO No. 685951
Stuart Rossman, BBO No. 430640
Joanna K. Darcus*
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110-1245
(617) 542-8010
pyu@nclc.org
srossman@nclc.org
jdarcus@nclc.org

*Application to appear pro hac vice forthcoming*